Argued May 15; demurrer to return to alternative writ
of mandamus overruled June 19, 1945

## MURSENER *v.* REDDING

(160 P. (2d) 307)

Before Belt, Chief Justice, and Rossman, Kelly.
Bailey, Lusk, Brand, and Hay, Associate Justices.

*Stephen F. Chadwick,* of Seattle, Washington, and Wilber Henderson, of Portland, for plaintiff.

*Oliver Crowther* and *Hugh L. Barzee,* both of Portland (T. B. Handley, District Attorney, and E. M. Morton, both of Portland, on the brief), for defendant.

BRAND, J.

Original proceeding in mandamus to compel The Honorable Charles W. Redding, circuit judge of the fourth judicial district of Oregon, to assign for trial the case of *O. W. Mursener v. M. K. Forte, et al,* to some judge other than The Honorable Alfred P. Dobson against whom the plaintiff has filed an affidavit of prejudice.

On November 22, 1943, the plaintiff, Mursener, instituted in the circuit court of Multnomah county a suit against M. K. Forte, et al. Thereafter the cause was assigned for trial to The Honorable Alfred P. Dobson, one of the circuit judges of that district, and various proceedings were had which will be noticed later. On March 24, 1944, the plaintiff, Mursener, filed a motion and affidavit of prejudice based upon O. C. L. A. § 1-503 for the purpose of disqualifying Judge Dobson. On January 16, 1945, said motion and affidavit were by the presiding judge assigned to the defendant, Judge Redding, for determination. On January 20, 1945, Judge Redding denied the motion. On January 23, 1945, the plaintiff filed his petition for an

alternative writ of mandamus whereby he sought the mandate of this court requiring Judge Redding to disqualify Judge Dobson and to reassign the case. An alternative writ issued. Judge Redding filed a voluminous return to which the plaintiff demurred and the case is here for our determination. Under our practice, the writ takes the place of a complaint and we shall refer to the petitioner as plaintiff, and to Judge Redding as the defendant. The demurrer to the return admits all well pleaded allegations thereof and opens the record.

The return of Judge Redding sets forth a record of the proceedings in the case of Mursener v. Forte from the filing of the complaint to the filing of the affidavit of prejudice. From it we ascertain the following facts. On November 22, 1943, plaintiff, Mursener, filed his complaint, identifying himself as acting for and on behalf of the International Brotherhood of Boilermakers, Iron Ship Builders and Helpers of America. By virtue of his alleged authority from the president of the International Brotherhood, he asserted the right to take full charge and control of the financial and business affairs of Local 72 of said Brotherhood and to oust the defendants, Forte, et al, from control over the affairs of said Local 72. Plaintiff also sought a temporary injunction enjoining the defendants from interfering with his custody and control of said Local 72. The complaint alleges that the defendants, Forte, et al, refused to permit the plaintiff to assume the duties to which he was appointed and were claiming to act as officers of Local 72 and that, as such, the defendants had been guilty of mismanagement of the affairs of said Local. At the instance of the plaintiff, a temporary injunction was issued against the

defendants. The defendants, Forte, et al, demurred to the complaint. Thereafter, and on January 5, 1944, by leave of court, Melinda E. Murray filed in said suit an answer in intervention, and on the same day, by leave of court, A. E. Jordan, C. Jaco, et al, filed therein their answer and cross-complaint in intervention.

The complaint in intervention contains allegations concerning misconduct by persons purporting to manage the affairs of Local 72. It includes charges of mismanagement against the plaintiff and others; the misappropriation of funds; and a multiplicity of suits, 14 lawsuits having been filed, all of which involved the affairs of Local 72. It alleges that the plaintiff is proposing to hold an illegal election for the selection of officers to control the affairs of said Local and prays for the appointment of a receiver; for orders which would provide for the holding of an election; for an accounting; and for an order restraining the plaintiff and the defendants from asserting any right to the control of Local 72.

By way of summary, it is sufficient to say that all of the pleadings in the case present a conflict between various groups and persons seeking to control the affairs of Local 72 and to secure possession of its funds. The pleadings involved questions as to who were or might become the lawful officers of said Local, and upon the decision of those questions depended in large measure the ultimate control of the affairs and funds of the Local. The election of officers under lawful authority would therefore constitute the actual settlement of substantial issues raised by the pleadings.

The cause, including the issues raised by the complaint in intervention, had been assigned to Judge Dobson who "heard said matters continually on and

between January 4, 1944 and January 17, 1944.''
Among the matters so heard was the claim of inter-
venor Melinda E. Murray which was compromised.

On or about January 17, 1944, Judge Dobson sus-
tained the demurrer to plaintiff's complaint. On the
same day the court made an order upon the petition of
the intervenors for the appointment of a receiver. The
order recites the appearance of the plaintiff by his
attorney. We quote a portion of that order:

>"Because of the number of matters submitted
>and the extent of the proceedings occasioned
>thereby, the court of the hearing of said matters
>took a wide range and became more or less informal,
>and it was understood between counsel and between
>the Court and counsel for the respective parties,
>that all matters involved might be submitted to the
>Court;
>"During the course of the hearing all parties,
>save plaintiff, agreed in open court that receiver-
>ship was the only solution for the difficulties of
>Local No. 72 and consented to the appointment of
>a receiver;
>"Said matters were heard from day to day to
>and including the 14th day of January 1944, during
>which time facts were disclosed upon which the
>Court finds that intervenors are entitled to the ap-
>pointment of a receiver and upon which the Court
>also finds that in any event it should upon its own
>motion in the best interests of all the parties hereto
>and the members of Mt. Hood Lodge Local No. 72
>appoint a receiver for said Local, with the power
>and authority and for the purposes in this order
>hereinafter set forth;''

The receiver was appointed and instructed as to
his powers and duties. He was directed to conduct an
election of delegates to the national convention of the
International Brotherhood, to pay the expenses of the

delegates, to hold meetings for the nomination of officers of Local 72, and to assume custody of all funds of the Local. The plaintiff was directed to deliver to the receiver all control of the business affairs, funds, records, etc., of the Local. The receiver was further directed to audit the assets thereof and to render an accounting.

The plaintiff filed and argued a demurrer to the complaint in intervention which was overruled on January 18, 1944. On the same day the temporary injunction which had been issued at the instance of the plaintiff was vacated by order of Judge Dobson and the order sustaining the defendants' demurrer to the plaintiff's complaint was entered. Thereafter, and on February 21, 1944, the plaintiff filed an answer to the cross-complaint of intervenors Jaco, et al, who in turn filed a reply.

Thereafter, and on March 5, 1944, a written agreement was entered into between the International Brotherhood by Charles J. MacGowan, president, Oscar Furuset, receiver, Morton & Crowther and Hugh L. Barzee, attorneys for the intervenors Jaco and Poore, and C. W. Robison, of attorneys for the defendants. It will be observed that Charles J. MacGowan was the officer of the International Brotherhood under whom the plaintiff, Mursener, claimed the authority to control the affairs of Local 72. The agreement, which is Exhibit 10 of the defendant's return, contained a first unnumbered paragraph followed by paragraphs numbered 2, 3, 4, 5, 7, 11, and 12. Paragraph 12 provided:

> "12. This memorandum shall be incorporated into a Stipulation and presented to the Court and urged by all concerned as a basis for an interlocutory decree to be followed, when consummated, by final decree."

The contents of the other paragraphs of the written agreement will be later set forth.

Pursuant to the provisions of paragraph 12 of Exhibit 10, and on the next day, March 6, 1944, a formal stipulation entitled in the cause was executed. It appears in the return as Exhibit 11 and, omitting the title, is as follows:

"The undersigned parties do hereby stipulate as follows:

"1. It is understood by all parties at interest that the election to be held in Lodge 72 on March 6th, 7th and 8th, 1944, will be in conformity with the constitution, laws and customs of the International Brotherhood. The tellers who have been previously selected will be designated by the International President to serve as tellers representing the International Brotherhood. There will be an International officer present at each session or shift during the three days that the election is to be held. These officers or representatives will be there in the capacity of observers only and as the personal representatives of the International President.

"2. Because the election was commenced under the former constitution, the qualifications of nominees and electees will be determined under that constitution;

"3. The officers elected will be installed in office by the International President as promptly as it can be arranged after tellers have counted the ballots.

"4. The Officers pro tem shall certify the election to the International Brotherhood.

"5. All assets now being held by the International Brotherhood for safekeeping will be turned over to the duly elected officers as soon as they have made bond, and the International Brotherhood will assist in procuring return of interpleaded funds to the duly elected officers.

"7. The International Brotherhood will take no disciplinary action against any member of Local 72 because of any conduct prior to the election which the International Brotherhood deems adverse to its interests or contrary to the constitution, by-laws, usages or customs of the International Brotherhood or Local 72.

"11. All interested parties agree to use their best efforts to promote peace and end pending litigation.

"12. This stipulation is intended as a basis for an interlocutory decree in the above entitled court and cause to be followed, when consummated, by final decree and is entered into pursuant to memorandum agreement of March 5, 1944.

"Dated at Portland, Oregon, March 6th, 1944.

"                    WILBER HENDERSON

"MORTON & CROWTHER and HUGH L. BARZEE

Attorneys for Receiver

"MORTON & CROWTHER and HUGH L. BARZEE

Attorneys for Intervenors Jaco, et al.

"                    C. W. ROBISON

Of Attorneys for Defendants"

Concerning this stipulation, attorneys for the plaintiff in their brief very properly say:

"Exhibit 11 of the Answer, which is the stipulation containing the substance of the agreement, was signed by one of the counsel for the plaintiff, therefore we do recognize that plaintiff is bound by the stipulation."

We have not set forth the full text of Exhibit 10, the agreement of March 5, because paragraph for paragraph it is substantially identical in numbering and

text to Exhibit 11 as set forth above. One difference, however, will be noted. Paragraph 12 of Exhibit 10, supra, provides that the memorandum shall be incorporated in a stipulation and presented to the court. Paragraph 12 of Exhibit 11 provides that "this stipulation is intended as a basis for an interlocutory decree" etc.

Charles J. MacGowan, who signed the agreement of March 5, was not a nominal party in the case of Mursener v. Forte, et al, but as we have said, he was the person under whom the plaintiff, Mursener, claimed authority to control the affairs of Local 72, and, as the principal of the plaintiff, he made the agreement with the receiver appointed by the court, and with other parties, and he authorized the execution of the formal stipulation which was executed by the plaintiff through his attorney on March 6.

Thereafter, and on March 11, the court made and entered an interlocutory decree which provided, in part, as follows:

"Now at this day this cause came on to be heard upon the interim report and petition of Oscar Furuset, Receiver, and upon a stipulation of the parties dated March 6, 1944, and the request by Receiver that an Interlocutory Decree be entered herein;

"And it appearing to the Court that the stipulation so made is for the best interest of all of the parties concerned herein, and that the same should be approved, and that Receiver should be directed as to his further conduct as Receiver, as hereinafter provided, and the Court being fully advised;"

Then follow paragraphs of the interlocutory decree which, paragraph for paragraph, in numbering and text, are substantially identical to paragraphs num-

bered 1, 2, 3, 4, 5, 7, and 11 of the stipulation of March 6, supra. Paragraph 12 of the interlocutory decree contains matter which is not found in the stipulation of March 6. It reads as follows:

"12. That Receiver continue to be responsible for the financial affairs of Local No. 72 until the newly elected officers have been regularly installed and have made bond, and that he at that time place to the account of the proper officers a sum sufficient for the ordinary operating expenses of Local No. 72, and complete an audit of the affairs of Local 72 and report the same to this Court, to the International Brotherhood, and to Local No. 72, and make his accounting of his administration and of all funds and assets coming into his hands for examination and action thereon by the Court and that he present to the Court for its determination, among other expenses, the matter of his fees and those of attorneys representing or assisting him in the discharge of his duties, and abide the further decree of the Court when he has so done."

BRAND, J.

It may well be argued that when President Charles J. MacGowan as the principal under whom plaintiff claimed authority to bring his suit executed Exhibit 10 and took other action as shown in the return, he thereby withdrew plaintiff's apparent authority to act in any manner inconsistent with the conduct of his principal and, upon the present record, it would seem that plaintiff is no longer empowered to object in his representative capacity to the action taken by the court pursuant to Exhibits 10 and 11. In reliance upon this view it is argued by the attorneys for Judge Redding that, even assuming the affidavit to have been timely filed, the plaintiff has no standing to oust Judge Dobson by an affidavit of prejudice. But even if it be true that the

plaintiff is no longer authorized to proceed in opposition to the position of his principal, we do not feel justified in determining the sufficiency of the affidavit of prejudice upon that ground or upon this record. The plaintiff is still a nominal party who may perhaps have some individual rights or liabilities which could be affected by the litigation. Attorneys for Judge Redding also argue that the conduct of Mursener and of his principal, MacGowan, subsequent to the filing of the affidavit of prejudice, amounts to a waiver of any rights thereunder. We prefer, however, to determine the case upon other grounds now to be considered.

O. C. L. A. § 1-501 provides that a judge of the circuit court may be disqualified by the filing of an affidavit of prejudice. § 1-502, as amended by Ch. 299, Or. L. 1943, provides the manner in which prejudice may be established. In part, it provides that "in judicial districts having a population of one hundred thousand (100,000) or more, the affidavit and motion for change of judge shall be made at the time and in the manner prescribed in section 1-503." The latter section controls procedure in Multnomah county, and is as follows:

"In any county of the state of Oregon where there is a presiding judge who hears motions and demurrers and assigns cases to the other departments of the circuit court for trial, the affidavit and motion for change of judges to hear the motions and demurrers or to try the case may be made at any time, either before or after the assignment of the case for trial, and either before a hearing upon a motion or demurrer or the commencement of trial of the said cause; provided, further, that no party or attorney shall be permitted to make more than two applications in any action or proceeding under this act." O. C. L. A. § 1-503.

■ Whatever doubts may arise as to the proper construction of the statute in other respects, this much at least is clear: an affidavit of prejudice under the statute comes too late if filed after the commencement of trial. Both parties have presented the case upon the theory that if the affidavit of prejudice was presented before the commencement of trial, it would be timely and they appear to concede that if presented after the commencement of trial, it would come too late. The matter being so presented, we are content to decide it upon that issue.

The plaintiff cites *Western Athletic Club v. Thompson,* 169 Or. 514, 129 P. (2d) 828, in support of the contention that the affidavit in the case at bar was filed within the time allowed by statute. In that case the trial judge tried the case on the merits after an affidavit of prejudice had been presented. On appeal it was held that the decree thus entered was void. The facts, however, are clearly distinguishable from those with which we are now concerned. In that case the plaintiff claimed to be the owner of the business and property of the Athletic Club and alleged that the defendant was plaintiff's manager and that he had violated his trust, had taken a lease in his own name and was claiming fraudulently to be the owner of the business and property of the club. The plaintiff joined the lessor of the property occupied by the club as a party defendant and sought the reformation of the lease, an accounting from the defendant, and an injunction restraining the defendant from entering the premises or interfering with the conduct of the business. The defendant claimed to be the sole owner of the club and its property. The defendant was cited to appear and show cause why an injunction should not be issued

against him. The matter was presented upon affidavit and, thereafter, before any order was made, the plaintiff amended his complaint and prayed for the appointment of a receiver. It appears that the trial judge appointed a receiver *pendente lite* "in order to preserve the value thereof during the pendency of this suit," and that the order appointing the receiver was made *ex parte* and was based only upon the evidence received upon the hearing for a temporary injunction. Defendant was accorded no hearing on the motion for receivership before the appointment was made. Some months later, the trial judge who had appointed the receiver announced an intention to try the case the next day. The next day, "but before the trial commenced—in fact, before Judge Stapleton had left his chambers—the motion and affidavit were filed and presented" to the trial judge. This was done before the reply to the defendant's answer had been filed. The case was therefore not at issue. It was held that notwithstanding the previous appointment of a receiver, the affidavit of prejudice was timely filed.

The distinction between the Western Athletic Club case and the case at bar is manifest. The Athletic Club case had not been put at issue when the affidavit was filed. The case at bar had been put at issue by the pleadings filed as above set forth. The receiver in the Athletic Club case was appointed merely to preserve the value of the property pending the determination of the case. The receiver in the case at bar may have been appointed in the first instance, in part, for the protection of the property pending the suit, but before the affidavit of prejudice was filed, the proceedings had progressed beyond that point. By means of the agreement and stipulation of the parties (Exhibits 10

and 11) and the resulting interlocutory decree, substantial contested issues as disclosed by the pleadings had been determined by the court. It is true that the stipulation related largely to an election of officers of Local 72, but it was provided that the property of the local should go to the persons who should be chosen at the election conducted by the receiver so that the conflict concerning the possession and control of the property would to that extent be determined when the interlocutory decree was made and its provisions enforced.

Our latest consideration of the law relative to affidavits of prejudice appears in the case of *Forte v. Page,* 172 Or. 645, 143 P. (2d) 669. That was an original mandamus proceeding brought by M. K. Forte who had filed an affidavit of prejudice for the purpose of disqualifying Judge Page in this same case. It appears that upon filing his complaint, Mursener also applied for the temporary injunction to which we have referred. The matter was presented to Judge Page before any of the defendants had been served with processes or knew of the pendency of the suit. On the same afternoon, the defendants, being advised of the pendency of the suit, engaged counsel and filed an affidavit of prejudice. The trial judge held that the affidavit was not timely filed and issued the temporary injunction (which is the same injunction later dissolved by Judge Dobson). This court quoted with approval from *Ralston v. Stone,* 113 Or. 506, 232 P. 631, as follows:

> " 'As used in this statute the phrase "before a hearing upon a motion or demurrer" means, and can only mean, the submission to the court for decision of a motion or demurrer, and it matters not whether the motion or demurrer is submitted upon oral or written argument or submitted without argument if argument is waived. * * * ' "

The *ex parte* presentation and submission to the trial judge of the motion for a temporary injunction was held to constitute a hearing thereon and the affidavit subsequently filed was therefore held to have come too late to affect the power of the judge to pass upon the motion. It was indicated by this court that the affidavit was, however, filed within sufficient time to prevent the trial judge from proceeding to hear the case on the merits. But we said:

"" * * * Judge Page was not assigned by the presiding judge to try it, but merely to hear and pass on an application for a preliminary injunction. These being the circumstances, it is evident that the judge treated the affidavit of prejudice as having been filed for the purpose of disqualifying him to act in the only matter before him and not in some distant matter such as the trial of the case, to which he had not been assigned. Rightly, as we have held, he refused to step aside, but proceeded to pass upon the question which had been submitted to him. By so doing he did not manifest an intention to participate further in the case." *Forte v. Page,* supra.

There is nothing in the case of *Forte v. Page* inconsistent with our conclusion here. The issuance of a temporary injunction upon an *ex parte* application before the case had been put at issue and by a judge who had been assigned to the cause only for the purpose of passing upon that application, presents a situation clearly distinguishable from that arising in the case at bar.

■  "Trial" is defined by statute as the judicial examination of the issues between the parties, whether they be issues of law or of fact. O. C. L. A. § 5-105. "Stipulation between the parties as to the facts, dictated in the presence of the judge, has been held to

constitute a trial." 64 C. J., Trial, § 3, p. 33. And see *Youngsters' Realty Corporation v. Oliver,* 180 N. Y. S. 26; and *Allan v. Allan,* 21 Ariz. 70, 185 P. 539.

But the stipulation in the case at bar was not merely a mutual agreement as to the facts, it was more. It was an agreement as to certain provisions which the parties, including the plaintiff, desired the court to incorporate in a decree and which could become effective only with the approval of the court. That approval was not a mere formality. It authorized the receiver to proceed in accordance with the stipulation. The trial judge entered upon the judicial examination of issues of fact as well as of law and exercised his judicial discretion in approving the stipulated provisions and in incorporating the additional provisions which appear in the interlocutory decree. The court found that it was "for the best interest of all of the parties concerned herein that the same should be approved." By signing the stipulation of March 6, the plaintiff certainly authorized the presentation thereof to the trial judge to the end that the interlocutory decree should be entered.

■ In the Western Athletic Club case, this court, speaking of the words, "the commencement of trial of said cause," said, "Those words, as they are commonly understood, mean the trial of the merits of the issues presented by the pleadings." In respect to the time at which trial on the merits commences, a receivership differs materially from a jury trial or an ordinary suit in equity. Once the receiver has been appointed, contested issues of various kinds may arise continuously over long periods of time. Questions of law, of fact, and of simple business management arise which may vitally affect the ultimate rights of the various liti-

gants. In conserving, operating, or liquidating a business, if mistakes and delays are to be avoided, it is of vital importance that a receiver be directed by a judge familiar with the history of the case.

■ In a recent case we adverted to the rule that a party should not be "allowed to speculate upon what rulings the court will make on propositions that are involved in the case and, if the rulings do not happen to be in his favor, to then for the first time raise the jurisdictional question." *State Capitol Commission v. McMahan,* 160 Or. 83, 83 P. (2d) 482; and *State ex rel. Johnson v. Circuit Court,* 114 Or. 6, 233 P. 563, 234 P. 262. That doctrine is peculiarly applicable to cases involving receivership.

■ All of the events to which we have referred transpired before the filing of the affidavit of prejudice. Upon the presentation and judicial consideration of the stipulation, if not before, we hold that the trial judge had entered upon the trial of the merits. The affidavit was filed "after the commencement of trial of said cause." O. C. L. A. § 1-503. It came too late. The plaintiff's demurrer to the return of Judge Redding is overruled.